IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| John Eddie Daniels,                           ) | |
|                                               ) | Civil Action No. 6:04-23294-CMC-WMC |
| Plaintiff,          ) | |
|                                               ) | **REPORT OF MAGISTRATE JUDGE** |
| vs.                                           ) | |
|                                               ) | |
| The City of West Columbia; Tony               ) | |
| Owens, Captain for City of West               ) | |
| Columbia Police Department; Chief             ) | |
| of Police; and others to be named             ) | |
| through discovery,                            ) | |
|                                               ) | |
| Defendants.         ) | |
|                                               ) | |

The plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983. This matter is before the court on the defendants' motion for summary judgment.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

The plaintiff filed his complaint on December 17, 2004. On August 16, 2005, the defendants moved for summary judgment. By order filed on August 17, 2005, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the dismissal procedure and the possible consequences if he failed to adequately respond to the motion. The plaintiff filed a response to the defendants' motion on September 7, 2005.

**FACTS PRESENTED**

On March 5, 2003, at approximately 9:40 a.m., the West Columbia Police Department received a call that there was a possible armed robbery at the Food Lion located at 1618 Airport Boulevard, West Columbia, South Carolina. Corporal William McClarrie, Detective Brian Carter, and Detective Kevin Riley arrived at the Food Lion and spoke to a clerk who was a witness to the robbery. The clerk stated that he witnessed the suspect push a grocery cart with store merchandise into the parking lot without paying for the items. The clerk followed the suspect and asked him for a receipt, and the suspect then brandished a knife and stated, "This is my receipt." The suspect then loaded cases of beer into his car and fled in a white Oldsmobile with tag number 622 AWP. Based upon the clerk's description, a be-on-the-lookout notice ("BOLO") was put out via the dispatcher for a suspect who was a black male, between 35 and 45 years old, between 5'9" and 5'11" tall, between 160 and 180 pounds, and wearing black pants, black jacket, black shoes, and a red cap (Carter aff. ¶ 5; Riley aff. ¶¶ 4-5; McClarrie aff. ¶ 4).

As they were en route to the Food Lion, Detective Ed Huffman and Patrolman John Hendrix observed a white Oldsmobile traveling in the opposite direction. The officers noted that the driver of the vehicle matched the physical description of the suspect in the Food Lion robbery. They pursued the suspect's vehicle into the city limits of Columbia. Officer Hendrix attempted to pull over the vehicle, but the vehicle did not stop. The suspect was driving erratically, and the pursuit was terminated because of potential danger to bystanders (Huffman aff. ¶¶ 4-6; Hendrix aff. ¶¶ 4-6).

On the morning of March 6, 2003, Corporal McClarrie responded to a report of a person shoplifting at the Hess station at 1208 Sunset Boulevard in West Columbia. The manager of the station stated that a black male entered the store, took one case of beer without paying for it, and left in a brown-colored car. The videotape of the incident showed a black male wearing a black stocking cap, black jacket, white shirt, black pants, and black

shoes take the case of beer. The manager told Corporal McClarrie that a witness indicated that the shoplifter's name was Daniel and he had a scar on his nose.

Immediately after taking the report, Corporal McClarrie went to the City of West Columbia traffic court. He observed a black male sitting in the courtroom with a black leather coat, white shirt, black pants, black shoes, and holding a black stocking cap in his hands. The man had a scar on the left side of his nose. Another investigator informed Corporal McClarrie that the man's name was John Daniels, the plaintiff in this case. Corporal McClarrie went outside and observed a brown car in the parking lot matching the description of the car given by the manager of the Hess Station. He observed in plain view a case of beer in the back seat of the car. After the plaintiff finished with his court proceedings, Corporal McClarrie placed him under arrest for the Hess station theft (McClarrie aff. ¶¶ 6-7).

Later that day, Detective Brian Carter observed that Corporal McClarrie had a suspect in custody for stealing beer at the Hess station. He observed that the plaintiff matched the physical description of the robbery suspect in the Food Lion case. He also noted that the plaintiff stole beer in a similar manner as the suspect in the Food Lion case. Detective Carter contacted Detective Huffman and Officer Hendrix. Detective Huffman stated that the plaintiff looked like the Food Lion suspect, but he was not positive, and Officer Hendrix positively identified the plaintiff as the person he observed in the white Oldsmobile fleeing the scene of the Food Lion robbery. Detective Carter interviewed the plaintiff, and he denied knowing where the Food Lion was located, which the Detective Carter found hard to believe since the plaintiff had lived in the area for most of his life. The plaintiff also told Detective Carter that he was at the Lexington County Courthouse on March 5, 2003, at 10:00 a.m. for roll call, and that when he left the courthouse, he went to The Jungle to drink beer and smoke dope. The solicitor's office told Detective Carter that the plaintiff was finished with roll call no later than 8:45 a.m., which Detective Carter noted would give him plenty of time to drive to the Food Lion. Detective Carter confronted the plaintiff with the information he had

3

from the solicitor's office. He asked the plaintiff what he was wearing on March 5, 2003, and the plaintiff replied that he was wearing the same clothes that he was wearing during the interview, which was all black clothing like the suspect in the Food Lion robbery (Carter aff. ¶¶ 7-10; Huffman aff. ¶¶ 7-8; Hendrix aff. ¶¶ 7-9).

On March 6, 2003, Detective Carter showed a photo lineup including the plaintiff's photo to the manager of the Food Lion. He was not able to identify anyone in the lineup. The manager told Detective Carter that he did not get a good look at the suspect as he saw him only from the side. When the suspect was facing him, the manager had focused his attention on the knife (Carter aff. ¶¶ 11-12).

On March 7, 2003, at 8:58 a.m., Detective Carter contacted the Lexington County Detention Center, where the plaintiff was being held on the Hess station charge, and placed a hold on him. Detective Carter presented the case to Captain Tony Owens, who approved his requests for three arrest warrants for the plaintiff for armed robbery of the Food Lion, possession of a knife during the commission of a violent crime, and failure to stop for blue lights and siren. Detective Carter presented the warrants to the municipal judge, and the warrants were served on the plaintiff on March 7, 2003. Detective Carter spoke to Investigator Steve Faust of the Richland County Sheriff's Department who advised him that they had a similar robbery in which the suspect stole beer and pulled a knife on the clerk. Investigator Ryan Gilbert of the Irmo Police Department advised Detective Carter that he was working a robbery in Irmo that involved a black male who, when confronted by the clerk, presented a knife and stated, "This is my receipt." The suspect fled in a white Oldsmobile Achieva, license tag 622 AWP (Carter aff. ¶¶ 12-17, 20).

On March 14, 2003, Detective Carter received a telephone call from Investigator Gilbert of Irmo, who told him that a suspect had been arrested by the Forest Acres Police Department for using a knife to rob a grocery store of beer. That suspect had fled in a white Oldsmobile. Noting the similarities with the Food Lion case, Detective Carter

4

arranged to interview the Forest Acres suspect, which he did on March 14, 2003, at 3:26 p.m. The suspect, Reginald B. Labrew, confessed to the robbery at the West Columbia Food Lion and to the robbery in Irmo. After the interview, Detective Carter immediately called Captain Owens and told him that they needed to drop the charges against the plaintiff (Carter aff. ¶¶ 17-19). Captain Owens then immediately called the solicitor's office and informed them that they were dropping the charges against the plaintiff relating to the Food Lion robbery. The plaintiff remained in jail until March 20, 2003, on the charges relating to the shoplifting offense at the Hess Station. The plaintiff pleaded guilty to the shoplifting charge and was given credit for time served and released (Carter aff. ¶¶19; McClarrie aff. ¶ 9; Owens aff. ¶¶ 11-14).

## APPLICABLE LAW

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

## ANALYSIS

Although the plaintiff does not identify the specific constitutional right allegedly violated by the defendants, it appears that he alleges he was arrested for the Food Lion robbery without probable cause in violation of the Fourth Amendment to the United States Constitution.

The plaintiff has named the City of West Columbia as a defendant. As noted by the defendant, municipalities and other local government units cannot be sued on a *respondeat superior* theory for the unconstitutional acts of their employees. *Monell v. Dept. of Social Services*, 436 U.S. 658, 691-92 (1978). The plaintiff must show that the

governmental unit's customs or polices caused the constitutional deprivations. Here, the plaintiff has complained of the actions of individual officers, and he has offered no evidence of a custom or policy by the City of West Columbia, nor has he shown that the individual officers were acting in conformance with a custom or policy.

To the extent that the plaintiff alleges a claim against Captain Owens and Chief Dennis Tyndall for supervision of the Food Lion robbery investigation, the plaintiff must establish three elements to hold a supervisor liable for a constitutional injury inflicted by a subordinate: (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to people like the plaintiff; (2) the supervisor's response was so inadequate as to constitute deliberate indifference or tacit authorization of the subordinate's conduct; and (3) there is an "affirmative causal link" between the supervisor's inaction and the plaintiff's constitutional injury. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir.), *cert. denied*, 513 U.S. 813 (1994). The plaintiff has failed to show that the subordinates were engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury. Further, there is no evidence that these defendants were indifferent to or authorized any such conduct.

Further, the defendants are entitled to qualified immunity in their individual capacities. Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This qualified immunity is lost if an official violates a constitutional or statutory right of the plaintiff that was clearly established at the time of the alleged violation so that an objectively reasonable official in the defendants' position would have known of it. *Id.*

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual

7

constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson*, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998).

An official's entitlement to qualified immunity is based upon "an objective reasonableness" standard. "The very idea of reasonableness requires that courts accord interpretive latitude to official judgments." *Torchinsky v. Siwinski*, 942 F.2d 257, 261 (4th Cir. 1991) (citing *Sevigny v. Dicksey*, 846 F.2d 953 (4th Cir. 1988)). "If reasonable mistakes were actionable, difficult questions of discretion would always be resolved in favor of inaction, and effective law enforcement would be lost." *Id.*

As the Fourth Amendment right to be arrested only upon probable cause is clearly established, the question that remains is whether a reasonable person in the defendants' positions would have thought their actions violated that right. The reasonableness of their conduct does not turn on whether probable cause was, in fact, present. *Hunter v. Bryant*, 502 U.S. 224, 226-27 (1991). When an officer acts pursuant to a warrant, the pertinent question is whether the officer could have reasonably thought there was probable cause to seek the warrant. *Anderson v. Creighton*, 483 U.S. 635, 638-39 (1987). "[I]t is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and . . . like other officials who act in ways they reasonably believe to be lawful[,] [they] should not be held personally liable." *Id.* at 641.

In this case, the defendants' actions were reasonable under the circumstances. The plaintiff matched the physical description of the suspect in the Food Lion robbery. He was arrested less than one day later for stealing a case of beer from the Hess station. A case of beer was also stolen from the Food Lion. Both thefts occurred in West Columbia. The suspect in the Food Lion robbery was wearing all black, and the plaintiff stated that he was wearing all black clothing on the day of the Food Lion robbery. When asked his whereabouts at the time of the Food Lion robbery, the plaintiff gave an alibi that did not check out after the officers contacted the solicitor's office. Additionally, the two officers who pursued the fleeing suspect after the Food Lion robbery believed that the plaintiff was, in fact, the same person upon viewing him. Based upon the foregoing, the defendants clearly had a reasonable basis to believe that probable cause existed for the warrants against the plaintiff. Accordingly, they are entitled to qualified immunity.

To the extent that the plaintiff's complaint can be perceived to state additional claims under state law, the court should decline to exercise supplemental jurisdiction over the claims as it is recommended that summary judgment be granted on the plaintiff's federal claims. *See* 28 U.S.C. §1367(c).

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, it is recommended that the defendants' motion for summary judgment be granted.


s/William M. Catoe
United States Magistrate Judge

December 21, 2005

Greenville, South Carolina